UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD E. ENGLE,

        Case No. 20-10403

      Plaintiff,

        District Judge Judith E. Levy

v.

        Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Harold E. Engle brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 13] be DENIED.

-1-

## I.  PROCEDURAL HISTORY

On March 30, 2017, Plaintiff filed applications for DIB and SSI, alleging disability as of February 6, 2016. ECF No. 11-6, PageID.237-243 (Tr. 196, 202)[1].  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on October 16, 2018 in Toledo, Ohio (Tr. 33).   Administrative Law Judge ("ALJ") Diane S. Mantel presided.  Plaintiff, represented by attorney Robert Samoray, testified, as did Vocational Expert ("VE") Mitchell Norman (Tr. 38-60, 60-68).   On February 27, 2019, ALJ Mantel determined that Plaintiff was not disabled (Tr.15-26).

On January 9, 2020, the Appeals Council declined to review the ALJ's decision (Tr. 1-3).   Plaintiff filed suit in this Court on February 17, 2020.

## II.  BACKGROUND FACTS

Plaintiff, born December 16, 1968, was 50 at the time of the  administrative decision (Tr. 26, 196).    He left school after eighth grade and received vocational training in painting (Tr. 224).  He worked formerly as a painter of residential and commercial property (Tr. 224).  He alleges disability due to depression, bronchitis, cracked vertebrae, and cervical disc problems (Tr. 223).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

---

[1]References to the administrative record, ECF No. 11, are henceforth cited by administrative transcript page number "(Tr.)."

He lived in South Rockwood, Michigan in a house with his girlfriend (Tr. 39, 43).  He had not worked since February, 2016 (Tr. 40).  His former work as a painter required him to lift up to 30 pounds (Tr. 41).  He held a valid driver's license but his ability to drive was limited by the inability to sit for long periods (Tr. 42).  He received medical insurance coverage through Medicaid, and had a pending Workers' Compensation claim (Tr. 42).

Plaintiff avoided using the stairs to the basement of his house (Tr. 44).  He was able to start household chores but was unable to finish them due to pain (Tr. 44).  His activities included sweeping, vacuuming, laundry chores, and preparing light meals (Tr. 44).  He tried to stretch and exercise every day in the belief that staying active helped his condition (Tr. 45).  He was unable to perform a chore for more than 15 minutes at a time (Tr. 45).  He spent most of his time reading self-help, "uplifting" books (Tr. 45-46).  He seldom watched television and did not know much about computers (Tr. 46).  At the time of the hearing, he had just started a new course of physical therapy (Tr. 46).  His ability to attend the thrice-weekly sessions was hampered by transportation and money problems (Tr. 47).  His physical therapy was not covered by Medicaid (Tr. 47).  He started the physical therapy without a referral from a physician (Tr. 48).

Plaintiff experienced depression and anxiety but did not take medication or receive mental health counseling (Tr. 49).  He had stopped his former weekly therapy for financial reasons, adding that the treatment was covered by Medicaid but the transportation costs were not (Tr. 50-51).  At that time, he was prescribed psychotropic medication but "never did land

-3-

a medication that worked" (Tr. 50). The psychological conditions were characterized by sleeplessness, worry, and frustration at not being able to make a living (Tr. 51).

Plaintiff experienced the greatest pain in his lower right back with shooting pain into his right leg, which he experienced up to three times a day (Tr. 51-52). The pain was chronic but varied in intensity (Tr. 52). His pain medication reduced his pain but did not eliminate it (Tr. 53). Plaintiff acknowledged that he had been discharged as a patient after testing positive for non-prescribed substances (Tr. 53). He denied his former physician's account that he had taken morphine, marijuana, and codeine before the drug test (Tr. 53-54). Injections did not help him for more than a few minutes (Tr. 54). He was reluctant to follow up on a recommendation for surgery (Tr. 54). At the time of the hearing he took Norco (Tr. 56-57). He experienced the medication side effect of "a little dizziness" (Tr. 57).

Plaintiff experienced problems gripping (Tr. 54). He underwent Carpal Tunnel release surgery on the left but his insurance ran out before he could undergo the same procedure on his right, dominant hand (Tr. 54). He often dropped items as a result of the right-sided Carpal Tunnel Syndrome ("CTS") (Tr. 54). He was unable to button with his right hand but could zip (Tr. 55). He used eating utensils with difficulty (Tr. 55). He was unable to stand or sit for more than 20 minutes at a time, and was unable to lift more than 15 pounds (Tr. 56).

Plaintiff went with others when making grocery shopping trips (Tr. 58). He did not experience difficulty getting along with other customers or clerks, and did not experience problems interacting with his doctors or their medical staff (Tr. 58). He felt depressed

because he could not engage in his former pastimes of deer hunting and throwing a Frisbee (Tr. 58).  He enjoyed watching home improvement shows (Tr. 58).

In response to questioning by his attorney, Plaintiff reported that he lost his state-sponsored insurance temporarily on multiple occasions (Tr. 59).   Back pain obliged him to recline for up to 20 minutes three times a day (Tr. 59).   Plaintiff opined that his recent Medicaid cancellation was possibly attributable to his failure to turn in some paperwork, adding that he required help managing his bills (Tr. 59-60).

**B.  Medical Records**

### 1.  Records Related to Plaintiff's Treatment[2]

August, 2014 counseling records note the conditions of severe depression with anger (Tr. 416).  August, 2015 mental health records state that Plaintiff's continued treatment for depression and anger management was compromised by financial constraints (Tr. 420).  In February, 2015, Plaintiff underwent left Carpal Tunnel release surgery without complications (Tr. 340-342).  In November, 2015, Plaintiff sought treatment for left knee pain (Tr. 343). Treating records note that he was fully ambulatory (Tr. 343).

January, 2016 counseling records note the current conditions of depression, anxiety, and "relationship problems" (Tr. 305).  Plaintiff exhibited a fair mood (Tr. 305).  He reported "a long history of bipolar disorder" but denied manic or hypomanic symptoms (Tr. 307).

---

[2]Records created prior to the alleged onset of disability date of February 6, 2016 are included for background purposes only.

Plaintiff reported that he used marijuana almost every day and was prescribed Norco (Tr. 308). He exhibited intact judgment and denied hallucinations (Tr. 308). Plaintiff was gradually tapered off Klonopin due to its negative interaction with Norco (Tr. 309). The following month, Plaintiff reported that he was sleeping and eating well but experienced mood swings (Tr. 311). Records from 2015 note the condition of opioid dependence (Tr. 504).

February, 2016 records note an elbow contusion and fracture of the vertebrae resulting from a February 7, 2016 fall (Tr. 314, 347). Followup exam records note a normal gait (Tr. 315). CTs of the head and cervical spine were unremarkable (Tr. 321, 323). A CT of the lumbar spine confirmed "mildly displaced fractures" at L2, L3, and L4 (Tr. 324). An x-ray of the chest was unremarkable (Tr. 332). Samer Elfallal, D.O. recommended conservative treatment including the use of a back brace (Tr. 404). Counseling notes from the following month note an appropriate effect and judgment (Tr. 389).

March, 2016 MRIs of the lumbar spine and pelvis showed discogenic changes at L4 and L5 with nerve root impingement and a sacrum fracture (Tr. 377). Treating records note a "normal antalgic, tandem, slow gait" with right lower extremity weakness (Tr. 487). Keith Barbour, M.D.'s records note Plaintiff's request for an off-work note (Tr. 490). Plaintiff reported that he was eating and sleeping well and was less depressed (Tr. 391). A May, 2016 MRI of the pelvis showed improvement in the sacrum fracture (Tr. 380). Plaintiff denied the current use of marijuana (Tr. 395). Counseling records state that he appeared to be making

progress (Tr. 397).  An MRI of the pelvis from the next month shows that the sacrum fracture was "completely healed" (Tr. 381, 406).  The same month, Plaintiff stated that he hoped to return to work soon following the injury (Tr. 400).  Dr. Barbour issued a month-long "disability certificate" (Tr. 574).  In July, 2016, Plaintiff began a six-week course of physical therapy (Tr. 551).  He reported that he could sit for 10 minutes, stand for 15,  and walk for up to 20 (Tr. 566).  Plaintiff continued to report significant pain (Tr. 459).  In October, 2016, Plaintiff reported that a work attempt was unsuccessful (Tr. 459, 556).  Dr. Barbour stated that Plaintiff "should be considering a permanent disability" (Tr. 459).  He limited Plaintiff to lifting 10 pounds with no bending with the need to take "frequent short breaks to stretch" (Tr. 549).

January and March, 2017 records note prescriptions for hydrocodone, Motrin, and Neurontin (Tr. 440, 448).  May, 2017 records note that Plaintiff's use of marijuana and non-prescribed drugs put him in noncompliance with the terms of his prescribed opiate use (Tr. 640).  Dr. Barbour discharged Plaintiff as a patient on June 1, 2017 (Tr. 648).  Dr. Barbour's notes from two weeks later state that he would help Plaintiff wean off opiate medications (Tr. 656).  In November, 2017, Mohamad Osman, M.D. noted hand grip weakness and right lower extremity symptomology (Tr. 675).  He recommended medication, physical therapy, and possible steroid injections (Tr. 675).   A December, 2017 MRI of the lumbar spine showed severe stenosis at L4-L5 which had slightly worsened since 2016 (Tr. 687). An MRI of the cervical spine showed moderate stenosis at C5-C6 (Tr. 688).  In February, 2018, Dr. Osman

found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit for eight hours and stand/walk for one; and required a five-minute break every half hour (Tr. 662). He precluded all postural activities except for the use of stairs and ramps (Tr. 662). In March and May, 2018, Plaintiff underwent epidural steroid injections (Tr. 678, 681). September, 2018 records by Faisal Ahmad, M.D. note Plaintiff's report of continued lower back pain radiating into the right leg (Tr. 664). An EMG of the lower extremities was normal (Tr. 665, 667).

## 2. Non-Treating Records

In July, 2017, Tanvir I. Qureshi, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's history of back pain, back surgery, and radiating lower back pain (Tr. 621). Dr. Qureshi noted the absence of back pain, weakness, and swelling of the extremities (Tr. 622). He noted normal muscle strength and tone with a normal gait and posture (Tr. 617, 622). He found that Plaintiff's ability to perform exertional, postural, and manipulative activity was unimpeded (Tr. 616). He found a reduced range of lumbar spine motion (Tr. 618).

The following month, psychiatrist L. Imasa, M.D. performed a consultative examination, noting Plaintiff's report of disability following a workplace accident (Tr. 625). Plaintiff reported pain, irritability, isolation, and worry (Tr. 625). Dr. Imasa noted that Plaintiff appeared depressed and tired but cooperative (Tr. 626). He denied hallucinations but reported varying degrees of forgetfulness (Tr. 626). Plaintiff appeared fully oriented (Tr. 627).

-8-

In September, 2017, Natalie Rea-Michalak, D.O. performed a non-examining review of Plaintiff's treating and consultative records, finding mild limitation in remembering or applying information and adaptation, with moderate limitation in interacting with others and concentration, persistence, or pace (Tr. 76). Dr. Rae-Michalak found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour period; and push and pull with limitations of the lower right and upper left extremities (Tr. 79). She limited Plaintiff to occasional postural activity and frequent gross manipulation on the left (Tr. 79-80). She found that Plaintiff should limit concentrated exposure to vibration and hazards such as machinery and heights (Tr. 80). She concluded that Plaintiff was capable of "simple, routine, unskilled light work (Tr. 80, 82).

### C. Vocational Testimony

VE Mitchell Norman classified Plaintiff's past work as a painter as skilled and exertionally medium as described by the *Dictionary of Occupational Titles* ("*DOT*")[3] (Tr. 61). The ALJ then posed the following set of limitations to the VE, describing a hypothetical

---

[3]

20 C.F.R. §§ 404.1567(a-d); 416.967(a-d) define *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

individual of Plaintiff's age, educational level, and work history:

> This individual can lift, carry, push and pull 20 pounds, occasionally, 10 pounds, frequently. This individual can sit for six hours out of an eight-hour workday and can stand and/or walk for six hours out of an eight-hour workday. This individual must have the ability to alternate between sitting and standing at their option every 20 minutes for l to 2 minutes so long as this individual is not off task or has to leave the vicinity of the workstation. This individual can occasionally climb, balance, crouch, kneel, stoop and crawl. This individual can frequently reach overhead, handle and push and/or pull with the bilateral upper extremities. This individual can frequently push and/or pull with the right lower extremity or operate foot controls. This individual cannot perform any commercial driving. This individual can occasionally work around unprotected heights or unprotected moving mechanical machinery. This individual can understand, remember and carry out simple, routine tasks, make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting with few and occasional changes. Given his hypothetical, could this hypothetical individual perform the past work that has been identified? (Tr. 61-62).

The VE testified that the above limitations precluded Plaintiff's past work but allowed for unskilled, exertionally light work of a lab sample collector (at least 24,000 positions in the national economy); mail clerk (86,000); and bench assembler (91,000) (Tr. 62-63). The VE testified further that if the same individual were additionally limited by a preclusion on climbing ladders, ropes, scaffolds, crawling, and work around unprotected heights and unprotected moving mechanical machinery, and could only occasionally climb ramps/stairs, balance, crouch, kneel, and stoop, the job numbers would remain unchanged (Tr. 63). The VE testified that the same hypothetical restrictions would allow for the sedentary work of a dowel inspector (64,000); document preparer (180,000); and order clerk (41,000) (Tr. 63-64). He stated the individual would be required to remain

-10-

on task for 90 percent of the workday and not miss work more than one day a month (Tr. 64). He stated that his testimony was consistent with the information found in the *DOT*, adding that the testimony regarding absenteeism and staying on task was based on his own professional experience (Tr. 66).     The VE testified in response to Plaintiff's counsel that  the need to take a five minute break every hour and a preclusion on all postural activity, considered together, would place the individual "right on the cusp" of acceptable productivity (Tr. 67).

### D.  The ALJ's Determination

Citing the medical transcript, ALJ Mantel found that Plaintiff experienced the severe impairments of "lumbar degenerative disc disease, displaced fracture lumbar transverse process L2, L3, L4; cervical degenerative disc disease; bilateral carpal tunnel syndrome, status post February 2015 left release; and psychological conditions variously described as: major depressive disorder, bipolar disorder, intermittent explosive disorder, opioid dependence, cannabis uses disorder, and alcohol use disorder," but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18). She found moderate limitation in remembering or applying information; interacting with others; concentration, persistence, or pace; and adaptation (Tr. 18).

-11-

ALJ Mantel determined that Plaintiff had the Residual Functional Capacity

("RFC") for exertionally light work with the following additional restrictions:

> He must have the ability to alternate between sitting and standing, at his
> option, every 20 minutes for 1-2 minutes so long as he is not off task or
> has to leave the vicinity of the workstation. The claimant can never climb
> ladders, ropes, or scaffolds or crawl and can occasionally climb ramps and
> stairs, balance, crouch, kneel, and stoop. He can frequently reach
> overhead, handle, and push and/or pull with the bilateral upper extremities.
> He can frequently push and/or pull with the right lower extremity and
> operate foot controls. He can never work around unprotected heights or
> unprotected moving mechanical machinery. He cannot perform any
> commercial driving. The claimant can understand, remember, and carry
> out simple, routine tasks, make judgments on simple work, and respond
> appropriately to usual work situations and changes in a routine work
> setting with few and occasional changes (Tr. 19).

Citing the VE's testimony (Tr. 62-64), the ALJ determined that Plaintiff could work

at the light jobs of lab sample collector, mail clerk, and bench assembler, as well as

the sedentary jobs of dowel inspector, document preparer, and order clerk (Tr. 25).

The ALJ noted that Plaintiff's complaints were not "completely dismissed, but

rather . . . included in the residual functional capacity to the extent they [were] consistent

with the evidence as a whole" (Tr. 24). She found that Dr. Osman's opinion that Plaintiff

required a work break every 30 minutes was undermined by the treating records showing

exclusively conservative treatment and a normal gait (Tr. 21-22).

-12-

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir.   1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the evidence is substantial, the court must "take into account

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

-14-

## V. ANALYSIS

### A. The ALJ's Assessment of the Medical Evidence

Plaintiff argues first that the ALJ erred by failing to accord deference to Drs. Barbour's and Osman's treating opinions of limitation. *Plaintiff's Brief,* ECF No. 13, PageID.758.  In Plaintiff's response to Defendant's motion for summary judgment, he concedes that for the period under review, a treating physician's opinion is not accorded presumptively controlling weight, but rather, is considered for its persuasive value along with the other medical opinions of record.  *Response,* ECF No. 16, PageID.794-795. Notwithstanding, he argues under the new standard that the treating opinions were entitled to significant persuasive value.  Plaintiff, 50 at the time of the administrative decision, also contends that his age combined with his limited education directs a finding of disabled under 20 C.F.R. Part 404 Subpart P, Appendix 2, Rule 201.10. ECF No.13, PageID.765.

For claims filed before March 27, 2017, the opinion of a treating physician is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence." *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (1996).  In contrast, for claims made on or after March 27, 2017, the ALJ will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to[] explain" the consideration given to the remaining factors. §§ 404.1520c(b); 416.920c(b). Plaintiff's application for benefits, made on either March 29 or 30, 2017 (Tr. 15, 196), is analyzed under the newer standard

Plaintiff relies on Dr. Barbour's and Osman's assessments. In October, 2016, Dr. Barbour stated that Plaintiff "should be considering a permanent disability" (Tr. 459). He limited Plaintiff to lifting 10 pounds with no bending and the need to take "frequent short breaks to stretch" (Tr. 549). In November, 2017, Dr. Osman found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit for eight hours and stand/walk for one; and required a five-minute break to change positions every half hour (Tr. 662). He precluded all postural activities except for the use of stairs and ramps (Tr. 662). The RFC composed by the ALJ is somewhat less restrictive, allowing Plaintiff to change positions for up to two minutes every 20 minutes with occasional balancing, crouching, kneeling, and stooping (Tr.

19).

The ALJ's finding that the treating opinions by Drs. Barbour and Osman were "less persuasive" is supported by substantial evidence and well explained.  The ALJ noted that Dr. Barbour's opinion that Plaintiff was incapable of all bending was undermined by his recommendation that Plaintiff participate in a work hardening program (Tr. 22).  She noted correctly that Dr. Barbour's disability opinion (assuming that it could be implied to state that Plaintiff was disabled from all work) was an issue reserved to the Commissioner (Tr. 22). *See* 20 C.F.R. § 404.1520b(c)(3)(i).  The ALJ provided a thorough discussion of the treating and examining observations, including a normal gait and the absence of weakness, and imaging studies from the relevant period (Tr. 20-22).

The ALJ found that Dr. Osman's opinion that Plaintiff was restricted to a narrow range of sedentary work was undermined by Plaintiff's conservative treatment, recommendations to undergo physical therapy, a normal EMG of the lower extremities, and a normal gait (Tr. 22-23).  The ALJ's somewhat less restrictive RFC is supported by the record.  A June, 2016 MRI shows that Plaintiff's sacrum fracture had completely healed (Tr. 381).  Physical therapy intake records from July, 2016 state that Plaintiff could sit for 10 minutes, stand for 15,  and walk for up to 20 (Tr. 566).  The RFC allowing for a position change for up to two minutes every 20 minutes is not dramatically more demanding that Plaintiff's account of his abilities just five months after the February, 2016 injury.  Dr. Osman's finding that Plaintiff was precluded from most postural activities is undermined by

the unremarkable EMG of the lower right extremity (Tr. 667). The RFC for occasional climbing of ramps/stairs, balancing, crouching, kneeling, and stooping is adequately supported by the record (Tr. 19).

Plaintiff faults the ALJ for concluding that the September, 2017 non-examining finding that he could perform a range of exertionally light work "more persuasive," noting that the non-examining source did not have benefit of Dr. Osman's later opinion (Tr. 23). However, the ALJ's adoption of the earlier, non-examining assessment does not automatically constitute error. In the instance that "an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, 'especially when that evidence reflects ongoing treatment'" the reviewing court "generally require[s] 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks v. Comm'r Soc.* Sec. 531 Fed.Appx. 636, 642 (August 6, 2013)(*quoting Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted).

Here, the ALJ discussed Dr. Osman's opinion in detail and provided multiple reasons for finding it less persuasive (Tr. 22-23). This argument is also undercut by the fact that the RFC composed by the ALJ is more restrictive than the non-examiner's findings. In contrast to the non-examining findings, the ALJ precluded all use of ladders, ropes, and scaffolds (Tr. 19, 79). Moreover, although the ALJ declined to adopt Dr. Osman's finding that Plaintiff required a five-minute break every 30 minutes, she allowed for a two-minute break every 20

minutes (Tr. 19).

Plaintiff's additional argument that he is entitled to disability as of his 50th birthday under the "Grids" does not provide grounds for remand.  Plaintiff, 50 at the time of the administrative decision, contends that his age combined with his limited education directs a finding of disabled under 20 C.F.R. Part 404 Subpart P, Appendix 2, Rule 201.10. ECF No.13, PageID.765.  Under Rule 201.10, a finding that a claimant age 50 to 55 is limited to sedentary work, does not have transferrable skills, and has a limited education directs a finding of disability.  20 C.F.R. Part 404 Subpart P, Appendix 2.  However because the ALJ made the finding Plaintiff could perform exertionally *light* work, Rule 202.11  applies. In contrast to Rule 201.10, the ability to do light work, with no transferrable skills and a limited education directs a finding of non-disability.  Because the ALJ's finding that Plaintiff could perform a range of light work is adequately supported, Plaintiff cannot show that he is disabled under the Grids.

### B.  Plaintiff's Subjective Claims

Plaintiff also argues that the ALJ improperly discounted his allegations of disability on the basis that his treatment was exclusively "conservative," arguing that his treatment included the "invasive procedures" of nerve blocks and steroid injections.  ECF No. 13, PageID.767.  Alternatively, he contends that the limitation to non-surgical treatment was recommended by his treating sources; thus, his failure to pursue more aggressive treatment should not be used to discredit his claims. *Id.* at 767-768.

-19-

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process.[4] 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id.* The ALJ acknowledged that the lumbar back conditions, CTS, and psychological conditions caused some significant degree of work-related limitation (Tr. 17).

Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence. SSR 16-3p at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ recounted Plaintiff allegations of physical and mental limitation but concluded that his professed degree of limitation was unsupported by the record (Tr. 22).   As to the physical limitations, the ALJ cited the clinical observations of a normal gait, good muscle

---

[4]

While Plaintiff faults the ALJ's "credibility determination," SSR 16-3p eliminates the use of the term "credibility" from SSA policy. 2016 WL 1119029, at *1. The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." *Id.*; *see* 20 C.F.R. §§ 404.1529, 416.929. However, "the implementation of SSR 16-3p did not abrogate the substantial case law pertaining to credibility evaluations under SSR 96-7p." *Boles v. Comm'r. of Soc. Sec.*, 2019 WL 5897920, at *7 (M.D. Tenn., Nov. 12, 2019)(*citing Dooley v. Comm'r. of Soc. Sec.*, 656 F. App'x 113, 119, n.1 (6th Cir. July 28, 2016))("SSR 16-3p removed the term 'credibility' only to 'clarify that subjective symptom evaluation is not an examination of an individual's character'").

strength, and the normal EMG study (Tr. 19-23).   Regarding the psychological limitations, the ALJ noted that Plaintiff denied symptoms of anxiety and depression in December, 2017 and February, 2018 with only mild depression and anxiety in November, 2017 (Tr. 22).  She noted that Plaintiff's treatment for the physical and psychological conditions was exclusively conservative (Tr. 18).

Plaintiff's argument that "conservative treatment" was not defined by the ALJ does not constitute grounds for remand.  "Conservative management is an approach to treating back pain, neck pain and related spinal conditions utilizing non-surgical treatment options, such as physical therapy, medication and injections." https://www.spine-health. com/glossary/conservative-treatment. (Last visited February 12, 2021). As to the psychological conditions, "conservative treatment" for depression is defined as "antidepressants and psychosocial therapy" as opposed to more aggressive methods such as electroconvulsive ("shock") therapy.  https://www.physio-pedia.com/Depression.  (Last visited February 12, 2021).  By these definitions, the ALJ did not err by finding that Plaintiff's treatment was wholly conservative.

Now that "conservative treatment" has been defined, Plaintiff  points out that his exclusively conservative treatment was based on his treating sources' medical advice; thus, his claims should not be discredited on the basis that he was abiding by their recommendations.   However, the fact that Plaintiff followed his treating sources' recommendations is not at issue.   Rather, the ALJ permissibly found that the

*recommendations* for only conservative treatment undermined Plaintiff's claim that his condition was disabling.  *See Tonnous v Comm'r of Soc. Sec.*, 2018 WL 914646, at *5 (S.D. Ohio, February 16, 2018), report and recommendation adopted, 2018 WL 1175295 (S.D. Ohio, March 5, 2018)(*quoting McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4, 215 F.3d 1327 (6th Cir. May 19, 2000))("'Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment'" consisting only of injections and sporadic physical therapy). *Nash v Comm'r of Soc. Sec.*, 2019 WL 5078455, at *6 (W.D. Ky. August 8, 2019), report and recommendation adopted, 2019 WL 4751554 (W.D. Ky. September 30, 2019)(claimant's "conservative treatment" in the absence of "urgent, emergent, or inpatient treatments" permissibly used to discount the allegations of disability).

Plaintiff also faults the ALJ for failing to consider his good work history. ECF No. 13, PageID.769.  Indeed, the transcript shows that Plaintiff had a long work history before his injury.  However, he provides no support for his claim that a good work history, with nothing more, requires an award of benefits.  The fact that the ALJ did not acknowledge his work history does not provide grounds for remand.  *See Kornecky v. Comm'r* of Soc. Sec., 167 F. App'x 496, 508–9 (6th Cir. February 9, 2006) (no requirement that the ALJ discuss every piece of evidence in the administrative record).   While Plaintiff contends that his financial constraints ought to have been factored into his limited treatment (Tr. 50-51), none of the treating records suggests that Plaintiff required more aggressive treatment for either the physical or mental conditions.  The ALJ noted that while Plaintiff was no longer taking

psychotropic medication, he "had an adequate appearance, fairly good,  contact with reality, was spontaneous, no hallucinations/delusion and oriented to person, place, and time" (Tr. 18).

Plaintiff also contends that his girlfriend's third-party function report of physical and psychological limitation ought to have received greater weight.  However, the ALJ noted that the girlfriend's "observations [were] considered where supported by the objective record" but permissibly found that her report was "less persuasive" to the extent that (1) she could not evaluate Plaintiff's work-related activities and, (2) she was not a medical professional (Tr. 23).  It is worth repeating that the RFC for a fairly restricted range of light work takes into account the need to change position at short intervals and perform no more than occasional postural activity and is well supported by the record.  As such, the ALJ did not err in partially adopting Plaintiff's allegations of limitation.

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's physical and mental conditions or his long work history. Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen_____
R. Steven Whalen
United States Magistrate Judge

Dated: February 16, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 16, 2021 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla_____
Case Manager